USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __05/31/2024__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA ADDI, individually and on behalf of all others
similarly situated,

                              Plaintiff,

           -against-

INTERNATIONAL BUSINESS
MACHINES, INC.,

                              Defendant.

No. 23 Civ. 5203 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Plaintiff Lisa Addi ("Plaintiff") brings this action, on behalf of herself and all others similarly situated, against Defendant International Business Machines, Inc. ("Defendant") for (1) violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, (2) the Maryland Wiretapping and Electronic Surveillance Act ("MWESA"), Md. Code Cts. & Jud. Proc. §§ 10-401, *et seq.*, and (3) unjust enrichment under New York law. (First Amended Complaint "FAC," ECF No. 18, ¶¶ 108-144.)

Defendant moves to dismiss Plaintiff's FAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (the "Motion", ECF No. 28.) For the following reasons, Defendant's Motion is GRANTED in part and DEFERRED in part.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the FAC and assumed to be true for the purposes of Defendant's Motion.

IBM owns and operates weather.com. (FAC ¶¶ 2-5.) The Website provides a range of weather data, daily climate news, and disaster coverage. (*Id.* ¶ 20.) While weather.com delivers content through numerous channels, at issue here are "pre-recorded, weather-related content," such as videos. (*Id.* ¶ 22.)

According to the FAC, when a user of weather.com creates an account and views a video, APIs facilitate the transmittal of certain user data—such as name, email, gender, and geolocation, and the name and URL of the video that the user viewed—to third parties mParticle, a customer analytics platform, and Xandr, a marketing and advertising platform. (*Id.* ¶¶ 28- 31.) APIs "enable[] companies to open up their applications' data and functionality to external third-party developers, business partners, and internal departments within their companies." (*Id.* ¶ 27.) mParticle and Xandr are used by IBM to collect user data and increase revenue from video-based marketing and advertising on weather.com. (*See id.* ¶¶ 65-92.)

Plaintiff, a resident of Maryland, is a weather.com account holder. (*Id.* ¶ 7.) She alleges that she visited weather.com while located in Maryland and logged-in to her website account, and watched pre-recorded videos during the months of May and June 2023. (*Id.* ¶¶ 5, 7.) During these visits to weather.com, Plaintiff claims that IBM "transmitted [her] video-viewing information and personally identifying information ('PII') to mParticle and []Xandr." (*Id.* ¶¶ 5, 8-9.) Plaintiff avers that mParticle and Xandr used her information to "analyze and track [her] activity across the Website, target [her] with relevant advertising, and assist Defendant with revenue generation." (*Id.* ¶ 10.) Plaintiff claims that she "never consented, agreed, nor otherwise permitted [IBM] to disclose her []information to third parties, or procure third parties to intercept her []information." (*Id.* ¶ 12.)

Based on these allegations, Plaintiff asserts claims for violations of the VPPA and MWESA, and unjust enrichment. (*Id.* ¶¶ 108-144.) Plaintiff also purports to represent a nationwide

class of all U.S. residents who visited weather.com during the statute of limitations period, as well as a Maryland-subclass. (*Id*. ¶¶ 98-99.)

## II.    Procedural History

Plaintiff filed the original Complaint on June 21, 2023. (ECF No. 5.) Defendant initially sought leave on August 14, 2023 (ECF No. 13) to bring a motion to dismiss the initial Complaint. Plaintiff responded on August 15, 2023 (ECF No. 14) opposing leave and informing the Court that she would avail herself of her right to amend as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). The Court, *inter alia*, directed Plaintiff to file a FAC no later than September 5, 2023. (ECF No. 15). Plaintiff then filed the FAC on September 19, 2023. (ECF No. 18.)

On February 2, 2024, Defendant filed the instant Motion (ECF No. 28), as well as a memorandum of law ("Def.'s MoL", ECF No. 29) and reply ("Def.'s Reply", ECF No. 33), in support thereof. Plaintiff filed an opposition to Defendant's Motion. ("Pltf.'s Opp.", ECF No. 31.)

## LEGAL STANDARD

## I.    Rule 12(b)(1)

A claim is subject to dismissal under Rule 12(b)(1) if the Court lacks subject matter jurisdiction to adjudicate it pursuant to statute or constitutional authority. *See* Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over such claim. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020); *see also Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (standing is "threshold matter" in determining the court's jurisdiction to hear a case).

Article III standing requires a plaintiff to demonstrate that: (1) he has suffered a "concrete and particularized injury"; (2) the injury "is fairly traceable to the challenged conduct"; and (3) the injury "is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff bears the burden of demonstrating his standing, *Lujan*, 504 U.S. at 561, including that he suffered a "concrete harm," *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2200 (2021), by a preponderance of the evidence, *Seaman v. National Collegiate Student Loan Trust 2007-2*, 2023 WL 6290622, at *7 (S.D.N.Y., 2023). The Supreme Court in *TransUnion* held that, although Congress creates causes of action for violation of legal prohibitions or obligations, "under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been <u>concretely harmed</u> by a defendant's statutory violation may sue that private defendant over that violation in federal court," *id.*, 141 S.Ct. at 2205 (emphasis in original). As summarized in that decision, "no concrete harm, no standing," *id.* at 2200, 2214.

## II.      Rule 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for "failure to state a claim upon which relief can be granted," a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court will accept the facts in a complaint as true "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual

4

content pleaded allows the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## DISCUSSION

### I.     Standing

Defendant contends that Plaintiff fails to allege any concrete injury sufficient to confer Article III standing under the VPPA or MWESA, and that her claims should be dismissed as a result. (Def.'s MoL at 11.) "As the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that [she] [has] standing." *TransUnion*, 141 S. Ct. at 2207. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quotation marks and alteration omitted). Where, as here, a Rule 12(b)(1) motion challenges standing on the face of the pleadings and does not rely on outside evidence, "[t]he task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quotation marks and brackets omitted).

The Supreme Court in *TransUnion* held that even where a federal statute provides for a right of action and statutory damages, the plaintiff does not have Article III standing unless she identifies a concrete harm that bears a "close relationship to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." 141 S. Ct. at 2204. In addition to physical

injury and monetary loss, the *TransUnion* court noted that traditionally recognized harms include "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

The Court considers the question of standing under both the VPPA and MWESA in turn.

    a.    <u>VPPA</u>

The VPPA "creates a private right of action for plaintiffs to sue persons who disclose information about their video-watching habits." *Salazar v. Nat'l Basketball Ass'n*, 685 F. Supp. 3d 232, 239 (S.D.N.Y. 2023) (citation omitted). The VPPA states that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1). "To state a claim under § 2710(b), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by another part of the statute." *Martin v. Meredith Corp.*, No. 22-cv-04776 (DLC), 2023 WL 2118074, at *3 (S.D.N.Y. Feb. 17, 2023) (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)).

The Supreme Court has held that "disclosure of private information" is an intangible harm traditionally recognized as actionable in American courts. *TransUnion*, 141 S. Ct. at 2190 (citing, *inter alia, Davis v. FEC*, 554 U.S. 724, 733, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008)). In light of this precedent, this Court has consistently found that "because the VPPA creates a specific right to relief for disclosures made in violation of the statute, a plaintiff asserting claims under the VPPA need only assert [her] information was wrongfully disclosed to have asserted an 'injury in fact' supporting Article III standing." *See Collins v. Pearson Educ., Inc.,* No. 23 CIV. 2219 (PAE), 2024 WL 895316, at *3 (S.D.N.Y. Mar. 1, 2024) (quoting *Austin-Spearman v. AMC Network Ent. LLC*,

98 F. Supp. 3d 662, 668 (S.D.N.Y. 2015)); *see also Alex v. NFL Enterprises LLC*, No. 1:22-CV-09239 (ALC), 2023 WL 6294260, at *3 (S.D.N.Y. Sept. 27, 2023) (same); *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 283 (S.D.N.Y. 2023) (same), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023); *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 90 (S.D.N.Y. Apr. 24, 2023) (same).

Viewing the FAC's allegations in their entirety, the Court finds that Plaintiff suffered an injury in-fact for purposes of the VPPA. The FAC alleges that Defendant disclosed or allowed third parties to intercept Plaintiff's personally identifiable information ("PII") and that Defendant was enriched by providing this data. (FAC ¶¶ 3-4, 132.) This adequately alleges concrete injury, in that Defendant "intentionally disclosed [Plaintiff's] personally identifiable information" to third parties "without [her] knowledge or consent." *Carter*, 670 F. Supp. 3d at 90 (S.D.N.Y. Apr. 24, 2023); *see also Alex*, 2023 WL 6294260, at *3 ("[p]laintiffs have sufficiently alleged they were injured when [d]efendants shared their private information and video watching data with Facebook without consent"); *Carter*, 670 F. Supp. 3d at 90 (complaint alleged concrete injury under VPPA where plaintiff's video-watching and personal information was allegedly disclosed to Facebook); *Martin*, 657 F. Supp. 3d at 283 (complaint alleged concrete injury under VPPA where plaintiff's personal information was allegedly disclosed to third party).[1] Accordingly, Defendant's motion to dismiss Plaintiff's VPPA claim on standing grounds will be denied.

---

[1] In the context of challenging Plaintiff's standing for purposes of her MWESA claim, Defendant argues that the Court should find that Plaintiff lacks standing because the tort of disclosure of private facts "requires that the disclosure 'made public' information such that it is 'substantially certain to become…public knowledge.'" (Def.'s Reply at 5 (quoting Restatement (Second) of Torts § 652D cmt. a).) But whether Plaintiff's PII was disseminated publicly or not, the *TransUnion* Court also referenced 'intrusion upon seclusion" as an injury "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" that could form a basis for Article III standing. *TransUnion*, 141 S. Ct. at 2204. Intrusion upon seclusion occurs when an individual "intentionally intrudes, physically or otherwise, upon the solicitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977). An example highlighted in the Restatement (Second) was an intrusion into someone's privacy "by opening [a plaintiff's] private and personal mail." *Id.* cmt. b. "The intrusion itself makes the defendant subject to

b.    MWESA

Plaintiff argues that "the relevant law is settled" (Pltf.'s Opp. at 5) that MWESA "codifies"

previously existing substantive privacy rights, such as "the individual's control of information

concerning his or her person," and that a violation thereof "gives rise to a concrete injury sufficient

to confer standing." (*id*. at 8 (quoting *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023).)

The Court disagrees, as "there is no consensus that MWESA violations alone give rise to an injury

in fact." *See Straubmuller v. Jetblue Airways Corp.,* No. CV DKC 23-384, 2023 WL 5671615, at

*2–3 (D. Md. Sept. 1, 2023). In fact, courts have found the very opposite: that the mere allegation

that a defendant violated MWESA, without additional concrete harm, does not satisfy Article III

standing requirements. *See id.* (concluding that alleging a violation of MWESA, without additional

concrete harm, cannot satisfy Article III standing); *Sprye v. Ace Motor Acceptance Corp.,* No. CV

PX 16-3064, 2017 WL 1684619, at *6 (D. Md. May 3, 2017) (holding that the plaintiff failed to

allege an injury sufficient to establish standing where the plaintiff alleged that the defendant's

recording phone calls with the plaintiff "constitute[d] numerous and multiple violations of the

[MWESA]"). Plaintiff cites no persuasive authority to the contrary. The cases she relies upon were

either issued pre-*TransUnion*, *see, e.g., In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d

589, 598 (9th Cir. 2020); *In re: Google Inc. Cookie Placement Consumer Priv. Litig.,* 934 F.3d

316, 325 (3d Cir. 2019), or analyze a statute other than MWESA, *see, e.g. Jones v. Ford Motor

Co.*, 85 F.4th 570, 574 (9th Cir. 2023) (discussing the Washington Privacy Act). Plaintiff's reliance

---

liability, even though there is no publication or other use of any kind of the ... information outlined." *Id.* "Plaintiff's claim that Defendant purposefully shared [her] private…information with a third party without Plaintiff's knowledge or consent is akin to that type of intrusion into [her] privacy." *See Salazar*, 685 F. Supp. 3d at 241.

    Defendant also makes the additional argument that the torts of disclosure of private facts and intrusion upon seclusion "require that the implicated information be sufficiently personal such that its collection or disclosure would be offensive to a reasonable person," and the information here is not offensive. (Def.'s Reply at 6.) As this Court has previously held, however, "a reasonable person could find it offensive that [their] private and personal details…were shared with a third party without their consent so that commercial parties could profit from targeted advertisements that were then sent to them." *See Salazar*, 685 F. Supp. 3d at 242.

on the Second Circuit's decision in *Bohnak v. Marsh & McLennan Companies, Inc.,* 79 F.4th 276 (2d Cir. 2023) is also misplaced. (*See* Pltf.'s Opp. at 2, 4.) In *Bohnak,* the court found that the "exposure of [plaintiff's] private information—including her SSN [social security number] and other PII—to an unauthorized malevolent actor…falls squarely within the scope of an intangible harm the Supreme Court has recognized as 'concrete.'" 79 F.4th at 286. By contrast, here, Plaintiff "has not alleged facts establishing targeting or misuse of [her] personal information." *See Straubmuller*, 2023 WL 5671615, at *5. The exposure of the plaintiff's information in *Bohnak* sufficed as a concrete harm because it involved misuse. Here, Plaintiff has pleaded no facts regarding misuse or any other injury in fact necessary for Article III standing. As a result, her MWESA claim is dismissed without prejudice for lack of standing.[2]

## II.     Failure to State a Claim Under the VPPA

Defendant contends that Plaintiff is not a "subscriber" of weather.com within the meaning of the VPPA. (Def.'s MoL at 12.) The VPPA protects "consumers," defined by statute to include "subscriber[s] of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The term "subscriber," however, is "not define[d]" under the VPPA. *Golden v. NBCUniversal Media, LLC*, No. 22 Civ. 9858 (PAE), 2023 WL 5434378, at *9 (S.D.N.Y. Aug. 23, 2023); *see also Carter*, 2023 WL 3061858, at *4 ("'[s]ubscriber' is not a separately defined term under the VPPA."). Several courts in this District have issued decisions aimed at clarifying the scope of "subscriber" in the context of online video streaming. *See Golden*, 2023 WL 5434378, at *10 (collecting cases, and noting that "to qualify as a subscriber under the VPPA, a plaintiff must allege more than either having (1) merely downloaded a free mobile app, or (2) merely signed up for a

---

[2] The Second Circuit has held that when, "a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice rather than with prejudice," *Fac. v. New York Univ.*, 11 F.4th 68, 78 (2d Cir. 2021) (internal quotation marks omitted), because "without jurisdiction, the district court lacks the power to adjudicate the merits of the case," *Harty v. W. Point Realty, Inc.,* 28 F.4th 435, 445 (2d Cir. 2022) (citation omitted).

free email newsletter unrelated to her video viewing" (citations omitted)). Among those decisions is *Salazar v. National Basketball Ass'n*, No. 22 Civ. 7935 (JLR), 2023 WL 5016968, at *8 (S.D.N.Y. Aug. 7, 2023) (holding that "[a] consumer under the VPPA – and necessarily, a 'renter, purchaser, or *subscriber*' under the VPPA – consumes (or rents, purchases, or subscribes to) audio visual materials, not just any products or services from a video tape services provider") (emphasis added).

While "[t]he Second Circuit has not" previously "addressed the application of th[e] term ['subscriber'] in the context of online video streaming," *Golden*, 2023 WL 5434378, at *9, the Court's order in *Salazar* is now on appeal. Among the issues on appeal is "[w]hether the District Court erred in finding that Plaintiff would not be able to state a claim under the VPPA because Plaintiff did not meet the definition of 'consumer' as defined by the VPPA." Form C Add. B at 1, *Salazar*, No. 23-1147 (2d Cir. Aug. 28, 2023), ECF No. 24-3. In light of the pending appeal, Plaintiff requests that this Court defer ruling on the question of whether Plaintiff qualifies as a subscriber under the VPPA to avoid a potential "intervening change of controlling law." (Pltf.'s Opp. at 12 (quoting *Motorola Credit Corp. v. Uzan*, 132 F. Supp. 3d 518, 520 (S.D.N.Y. 2015).)

The Court joins others in this District to defer ruling on this question until the Second Circuit issues its decision in *Salazar*. *See Lamb v. Forbes Media LLC*, No. 1:22-CV-06319-ALC, 2024 WL 1364678, at *2 (S.D.N.Y. Apr. 1, 2024); *Joiner v. NHL Enterprises, Inc.,* No. 23CV2083LAKBCM, 2024 WL 639422, at *1–2 (S.D.N.Y. Feb. 15, 2024); *Leslie v. Thompson Reuters Corp.,* No. 22 CIV. 07936 (JHR), 2023 WL 6173511, at *2 (S.D.N.Y. Sept. 22, 2023). Both parties stand to benefit from gaining clarity on the scope of the VPPA before engaging in potentially expensive—and uncertain—litigation. "Regardless of how the Second Circuit rules in *Salazar*, it will likely impact issues pending in this case. But if this Court were to rule now in this

action, without the benefit of an appellate ruling in *Salazar*, it would only result in complicating matters, risking a ruling at odds with *Salazar*, and delaying the resolution of this action still further." *Leslie,* 2023 WL 6173511, at *2 (quoting *Kunsman v. Conkright*, No. 08 Civ. 6080 (DGL), 2018 WL 9781177, at *1 (W.D.N.Y. Jun. 25, 2018)). "The Second Circuit's decision in *Salazar* could contain guidance that 'would allow this litigation to proceed on a reasonable and efficient basis.'" *Lamb*, 2024 WL 1364678, at *2 (citation omitted). And "[w]hile the *Salazar* case 'may not settle every question of fact and law before this Court,' it will, 'in all likelihood…settle many and simplify them all.'" *Id.* (quoting *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012)).  In sum, "[i]t would be an inefficient use of time and resources of the Court and the parties to proceed in light of a pending Second Circuit decision that will significantly impact this litigation." *Leslie*, 2023 WL 6173511, at *2 (quoting *Hoover v. HSBC Mortg. Corp. (USA)*, 13 Civ. 149 (MAD), 2014 WL 12781322, at *2 (N.D.N.Y. July 9, 2014)).

Accordingly, the Court defers ruling on the viability of Plaintiff's VPPA claim until the Second Circuit issues its decision in *Salazar*. Within seven days of the Second Circuit's decision in *Salazar v. National Basketball Ass'n*, No. 23-1147 (2d Cir.), the parties shall file a joint letter regarding the effect of the Second Circuit's decision, if any, on this case.

## III.   Unjust Enrichment

Plaintiff asserts a claim for unjust enrichment based on Defendant's purported disclosure of Plaintiff's PII for "its own financial advantage." (FAC ¶¶ 140-142.) Defendant contends that Plaintiff's claim is duplicative of her MWESA and VPPA claims. (Def.'s MoL at 20.) The Court agrees.

To allege unjust enrichment under New York law,[3] a plaintiff must plead that the defendant benefitted at the plaintiff's expense, and that equity and good conscience require restitution. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Unjust enrichment "is not a catchall cause of action to be used when others fail," and is not available where "it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012). "Even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Golden v. NBCUniversal Media, LLC*, No. 22 CIV. 9858 (PAE), 2023 WL 5434378, at *12 (S.D.N.Y. Aug. 23, 2023) (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)). Finally, "[i]f the gravamen of the [c]omplaint sounds in tort or contract giving rise to a traditional claim, then the unjust enrichment claim is improper." *Lin v. Canada Goose US, Inc.,* 640 F. Supp. 3d 349, 361 (S.D.N.Y. 2022); *accord Ohanian v. Apple Inc.,* No. 20 CIV. 5162 (LGS), 2022 WL 826415, at *4 (S.D.N.Y. Mar. 18, 2022).

Here, Plaintiff's unjust enrichment claim is based on the same allegations as her other claims. Plaintiff alleges that she conferred a benefit on IBM "unwittingly . . . when [IBM] disclosed to third parties, or otherwise procured third parties to intercept, Plaintiff's and Class Members' personally identifiable information and the contents of Plaintiff's and Class Members' Website communications without their consent." (FAC ¶ 140.) She also alleges that IBM was enriched by, among other things, providing Plaintiff's data to such third parties to target users with advertising. (FAC ¶¶ 141-42.) This alleged conduct is the same as the conduct Plaintiff alleges violates the VPPA and MWESA. (*See, e.g.*, FAC ¶¶ 113-116 (alleging violation of the VPPA by "disclos[ing]

---

[3] The parties do not dispute the application of New York law. (*See* Def.'s MoL at 20 n.9; Pltf.'s Opp. at 24-25.)

Plaintiff's and Class Members [sic] PII . . . with[out] any form of consent"); 126-134 (alleging violation of MWESA because IBM "profited when it utilized Plaintiff's and Class members' personal information stored without meaningful consent for its own financial advantage").) All of Plaintiff's claims, including the unjust enrichment claim, are based on the theory that Defendant disclosed or allowed third parties to intercept her PII and that Defendant was enriched by providing this data. As a result, to the extent that her statutory claims succeed, "the unjust enrichment claim is duplicative; if [P]laintiff['s] other claims are defective, an unjust enrichment claim cannot remedy the defects." *See Lin,* 640 F. Supp. 3d at 361 (quoting *Corsello*, 944 N.Y.S.2d 732, 967 N.E.2d at 1185). The unjust enrichment claim is thus dismissed without prejudice because it is entirely duplicative of the other claims in the FAC. *See Golden*, 2023 WL 5434378, at *13 (dismissing unjust enrichment claim as duplicative of VPPA claim); *Ohanian*, 2022 WL 826415, at *4 (dismissing unjust enrichment claim as duplicative of statutory claim).

## IV.   Leave to Amend

In the final sentence of her opposition brief, Plaintiff states without further elaboration that if the Court grants Defendant's motion to dismiss in any respect, it should grant leave to amend. (Pltf.'s Opp. at 25.) Rule 15(a)(2) allows a party to amend its pleading with the other party's written consent or the Court's leave. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The "permissive standard" of Rule 15 embodies a "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (per curiam)). A request to amend is ultimately within the discretion of the district court judge, who may deny leave to amend "for good reason, including futility, bad faith,

undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Here, the possibility exists that the defects of Plaintiff's unjust enrichment claim can be cured. *See Wiggins v. Unilver United States, Inc.,* 684 F. Supp. 3d 127, 155 (S.D.N.Y. 2023) (granting leave to amend unjust enrichment claim that was dismissed for being duplicative of plaintiffs' other claims). Additionally, the circumstances that often counsel against granting leave to amend—such as undue delay, bad faith, dilatory motive, or futility—are not present. Accordingly, the Court will permit Plaintiff to amend the FAC for the limited purpose of adding factual allegations as to her unjust enrichment claim. Plaintiff will not have further opportunities to amend this claim.

By contrast, regarding Plaintiff's MWESA claim, "it is difficult to see how any revised claims could overcome the foundational deficiencies in [P]laintiff['s] theory of Article III standing. *See Liau v. Weee! Inc.,* No. 23 CIV. 1177 (PAE), 2024 WL 729259, at *7 (S.D.N.Y. Feb. 22, 2024). As a result, leave to amend is denied as to this claim. *See*, *e.g.*, *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 91 (2d Cir. 2023) (affirming denial of leave to amend due to plaintiff's failure to identify "additional facts or legal theories—either on appeal or to the District Court—they might assert if given leave to amend" that would establish Article III standing) (citation omitted).

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the First Amended Complaint is GRANTED in part and DEFERRED in part. Defendant's motion to dismiss is granted as to Plaintiff's claim under the Maryland Wiretapping and Electronic Surveillance Act and her unjust enrichment claim.

Defendant's motion to dismiss is deferred as to Plaintiff's claim under the Video Privacy Protection Act. Within seven days of the Second Circuit's decision in *Salazar v. National Basketball Ass'n*, No. 23-1147 (2d Cir.), the parties shall file a joint letter regarding the effect of the Second Circuit's decision, if any, on this claim.

Plaintiff is granted leave to file an Amended Complaint as to her unjust enrichment claim. If Plaintiff chooses to do so, Plaintiff will have until July 1, 2024 to file a Second Amended Complaint. The Defendant is then directed to answer or otherwise respond by July 22, 2024.  If Plaintiff fails to file an Amended Complaint within the time allowed, and she cannot show good cause to excuse such failure, her unjust enrichment claim will be deemed dismissed with prejudice.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 28.

Dated:   May 31, 2024                                     SO ORDERED:
         White Plains, New York

_____
          NELSON S. ROMÁN
       United States District Judge